**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | ) ) | Chapter 11 |
| TOUGH MUDDER INCORPORATED; and TOUGH MUDDER EVENT PRODUCTION INCORPORATED, | | Case No. 20-10036 (CSS) Case No. 20-10037 (CSS) |
| | | **[Requested] Objection Deadline: February 20, 2020, at 4:00 p.m. (EST)** |
| | | **[Requested] Hearing Date: February 25, 2020, at 1:00 p.m. (EST)** |
| Debtors. | | |

**CHAPTER 11 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING ENTRY INTO AND PERFORMANCE UNDER ASSET PURCHASE AGREEMENT BY AND AMONG SPARTAN RACE, INC., AND DEBTORS' CHAPTER 11 TRUSTEE, (II) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND RELATED PROCEDURES, (IV) APPROVING THE BID PROTECTIONS, AND (V) <u>GRANTING RELATED RELIEF</u>**

Derek C. Abbott, Esq., the chapter 11 trustee (the "<u>Trustee</u>") for Tough Mudder Inc. ("<u>Tough Mudder</u>") and Tough Mudder Event Production Inc. ("<u>TM Events</u>" and, together with Tough Mudder, the "<u>Debtors</u>"), in the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>") hereby moves (the "<u>Motion</u>") for entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Sale Order</u>"): (i) approving that certain Asset Purchase Agreement, dated as of February 7, 2020, by and among Spartan Race, Inc., or its designee (the "<u>Buyer</u>," along with the Trustee on behalf of the Debtors' estates, a "<u>Party</u>," and, together with the Trustee, the "<u>Parties</u>") and the Trustee for the benefit of the Debtors' estates (the "<u>Sale</u>

Agreement");[1] (ii) authorizing and approving the sale of the Acquired Assets to the Buyer, free and clear of all Encumbrances (the "Sale"); (iii) approving the assumption and assignment of certain contracts to the Buyer in connection with the Sale and related procedures; (iv) approving certain Bid Protections (as defined below) for the Buyer; and (v) granting related relief.   In support of this Motion, the Trustee respectfully represents as follows:

## JURISDICTION AND VENUE

1.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.   This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.       Pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Trustee consents to the entry of a final order by the United States Bankruptcy Court for the District of Delaware (the "Court") in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.       The statutory predicates for the relief requested herein are sections 105(a), 363, and 365 of title 11 of the United States Code (the "Bankruptcy Code"), as supplemented by rules 2002, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 6004-1.

---

[1]        A copy of the Sale Agreement is attached hereto as **Exhibit B** and incorporated herein by reference. Capitalized terms not defined in this Motion are used as defined in the Sale Agreement.

# BACKGROUND

## A.    Procedural Background

4.      On January 7, 2020 (the "Petition Date"), Valley Builders LLC, Trademarc Associates, Inc., and David Watkins Homes Inc. (collectively, the "Petitioning Creditors") filed involuntary petitions under chapter 11 of the Bankruptcy Code against Tough Mudder and TM Events.

5.      On January 21, 2020, the Court entered the *Order Directing the Appointment of a Chapter 11 Trustee* [D.I. 18].[2]   The Court entered an order approving the appointment of the Trustee on January 30, 2020 [D.I. 24] (the "Appointment Date"), and the Trustee accepted his appointment on January 31, 2020 [D.I. 25].  Since that time, the Trustee has managed the Debtors' affairs pursuant to section 1106 of the Bankruptcy Code.

## B.    The Debtors' Business[3]

6.      Tough Mudder and TM Events are both Delaware corporations. McLaughlin Dec. ¶ 10.  Tough Mudder is the principal operating entity of the "TM Group," consisting of Tough Mudder, TM Events, Tough Mudder Events, Ltd., and certain of their domestic and foreign subsidiaries (collectively, the "TM Group").  *Id.*  Tough Mudder made all major corporate decisions for the TM Group and owns all of the TM Group's intellectual property (the "Intellectual Property").  *Id.*  TM Events is a subsidiary of Tough Mudder.  *Id.*

---

[2]      Docket item references in this Motion are to the docket maintained in the chapter 11 case of *Tough Mudder, Inc.*, Case No. 20-10036 (CSS).  No order of joint administration has been requested or entered in these cases to date.

[3]      A more detailed description of the Debtors' business and the facts and circumstances leading to the Chapter 11 Cases is set forth in the *Declaration of Kyle McLaughlin in Support of Chapter 11 Trustee's Motion for Entry of an Order (I) Approving Entry Into and Performance Under Asset Purchase Agreement by and Among Spartan Race, Inc., and Debtors' Chapter 11 Trustee, (II) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Approving the Assumption and Assignment of Certain Contracts and Related Procedures, (IV) Approving the Bid Protections, and (V) Granting Related Relief* (the "McLaughlin Declaration"), dated February 7, 2020, attached hereto as **Exhibit C** and incorporated herein by reference.

7.    Tough Mudder develops and hosts, either directly or through its subsidiaries, endurance event series in which participants compete in various obstacle course races around the world. *Id.* ¶ 11. Tough Mudder primarily generates revenue through ticket sales and advertising. *Id.* Over the last two years, approximately 700,000 people participated in over 170 events around the world hosted by the TM Group. *Id.*

8.    Prior to the Petition Date, in the latter half of 2019, Tough Mudder's board of directors and management team ("Management") identified that Tough Mudder was financially distressed and needed to restructure its debt obligations, which it could no longer service in the ordinary course with the cash flow generated from the business. *Id.* ¶ 12. Management sought to refinance, recapitalize, or otherwise sell Tough Mudder on an expedited basis in an effort to preserve Tough Mudder's business and restructure its debt. *Id.* Management believed that if a transaction to save the Tough Mudder's business as a going concern was not executed by the end of 2019, Tough Mudder, and TM Group as a whole, might have to cease operations, to the detriment of stakeholders generally. *Id.*

9.    Tough Mudder retained Imperial Capital, LLC ("Imperial"), an investment bank headquartered in Los Angeles, California, to assist in running a sale and investor solicitation process (the "SISP") whereby offers were solicited for the sale of the TM Group and, concurrently, strategic investors were sought to provide Tough Mudder with sufficient liquidity to continue as a going concern and realize its long-term business goals. *Id.* ¶ 13.

10.    As a result of the SISP, the Buyer expressed interest in acquiring all or substantially all of the assets of the TM Group. *Id.* ¶ 14. Tough Mudder identified the Buyer, a sophisticated party and a competitor operating within the same industry, as its preferred purchaser and, with the approval of Management and after extensive arm's-length negotiations,

entered into a letter of intent (the "LOI") with the Buyer on November 29, 2019. *Id.* The LOI outlined terms for a potential sale transaction whereby the Buyer would acquire all or substantially all of the TM Group's assets and assume certain of the TM Group's liabilities with a view toward continuing to operate Tough Mudder's business as a going concern (the "Proposed Prepetition Transaction"). *Id.*

11.    Believing the Proposed Prepetition Transaction to be in the best interests of the TM Group and its stakeholders generally, Management sought to finalize a definitive agreement with the Buyer. *Id.* ¶ 15.    Apparently, however, Will Dean ("Dean"), Tough Mudder's co-founder, director, and majority shareholder, and Guy Livingstone ("Livingstone"), Tough Mudder's other co-founder and another major shareholder, sought multi-million dollar payments from the Debtors' ticket sales platform, Active Networks LLC, for their equity position in Tough Mudder in connection with the Proposed Prepetition Transaction. *Id.* The Debtors, Dean, and Livingstone could not reach an agreement with regard to the payments, and the Proposed Prepetition Transaction did not take place. *Id.*

12.    In the wake of the Proposed Prepetition Transaction not going forward, the Buyer sought to acquire all or substantially all of the assets of certain Tough Mudder subsidiaries through an alternative transaction. *Id.* ¶ 16.    On December 23, 2019, Spartan Race Holdings, Inc. ("Spartan Race"), an affiliate of the Buyer, entered into an agreement (the "Call Option Deed") with Tough Mudder Events Ltd., Tough Mudder Ltd. and Tough Mudder GmbH (together, the "TM Subsidiaries"), wherein Spartan Race acquired the option to purchase all or substantially all of the TM Subsidiaries' assets, subject to the terms and conditions of the underlying Business Transfer Agreements (appended to the Call Option Deed) in respect of each TM Subsidiary. *Id.* The transactions contemplated by the Call Option Deed were intended to be

consummated in Canada and the United Kingdom through certain administrative proceedings. *Id.* But shortly after the execution of the Call Option Deed, Dean appointed himself sole director of Tough Mudder Ltd. and all further action contemplated by the Call Option Deed stalled. *Id.*

13.    In the wake of the failed Proposed Prepetition Transaction and Call Option Deed, the TM Group was at a global standstill. *Id.* ¶ 17. The TM Group ceased operating and selling tickets in the midst of a severe liquidity crisis. *Id.* The TM Group could no longer afford to pay its employees. *Id.* As a result, on December 20, 2019, all activity in the Debtors' headquarters effectively ceased. *Id.* Subsequently, the Petitioning Creditors filed the involuntary petitions commencing these Chapter 11 Cases.

### C.    The Sale Agreement

14.    At or about the time of the Appointment Date, the Trustee received a term sheet (the "Term Sheet") from the Buyer proposing the Sale, by which the Buyer would acquire certain of the Debtors' assets through a section 363 sale in the Chapter 11 Cases.

15.    Following good faith, arm's-length negotiations, the Trustee reached agreement with the Buyer for the Sale of certain of the Debtors' assets under section 363 of the Bankruptcy Code on the terms and conditions set forth in the Sale Agreement. The Sale Order will also authorize the Trustee to pay the Buyer a break-up fee (the "Break-Up Fee") of $20,000.00 and reimbursement of its reasonable and documented out-of-pocket expenses and disbursements not to exceed $50,000.00 (the "Expense Reimbursement," and, together with the Break-Up Fee, the "Bid Protections") payable only if an Alternative Transaction closes.[4]

---

[4]    Pursuant to the terms of the Sale Agreement, an "Alternative Transaction" is defined as a transaction or series of related transactions pursuant to which Seller accepts a bid for all or a material portion of the Acquired Assets or any group of assets that includes all or a material portion of the Acquired Assets, from a Person other than Buyer or any Affiliate of Buyer (or a group or joint venture that includes Buyer or any Affiliate of Buyer), as the highest or otherwise best offer, in accordance with the Sale Motion. Sale Agreement § 1.1.8. In addition, the Sale Agreement provides:

16.     In accordance with Local Rule 6004-1(b)(iv), key terms of the Sale and the Sale Agreement are as follows:[5]

A.   <u>Purchase Price</u>.  The Purchase Price shall consist of $700,000 cash at closing, plus the value of the Assumed Liabilities (estimated to be approximately $7.5–$10 million).

B.   <u>Acquired Assets</u>.  The Buyer will acquire all of the Debtors' right, title and interest in the Acquired Assets free and clear of all liens, claims and encumbrances (other than the Assumed Liabilities).

C.   <u>Assumed Liabilities</u>.  The Buyer will assume the Assumed Liabilities, which include (i) Seller's obligations to natural persons holding event registrations associated with an Assumed Event, (ii) for each of the Excluded Events, Buyer will exchange any natural person's event registration for two comparable Buyer event registrations to occur on or before December 31, 2021, (iii) for every 2020 Tough Mudder Season Pass held by a natural person, Buyer will exchange their 2020 Tough Mudder Season Pass for two consecutive years (i.e., 2020-2021) of a comparable Buyer season pass, (iv) all Liabilities of Seller under each Assumed Contract, in each case, arising after the Closing (v) all Cure Claims, (vi) all Liabilities arising out of Buyer's use of the Acquired Assets by Buyer after the Closing to the extent such Liabilities arise solely out of any matter, occurrence, action, omission or circumstance that first occurred or existed after the Closing.

D.   <u>Excluded Assets</u>.  Excluded Assets include, other than to the extent of Acquired Assets, all claims, cross claims, and causes of action of Seller or the Debtor, including without limitation arising under Sections 542 through 553 of the Bankruptcy Code and against current or former directors and officers of the Debtor.

---

In the event that this Agreement is terminated pursuant to Section 6.1.6 or if Seller otherwise closes an Alternative Transaction within two (2) months from the Effective Date, Seller, on behalf of the Debtor, shall pay to Buyer a cash amount equal to $20,000.00 (the "Break-Up Fee"), and the Expense Reimbursement in cash.  The Expense Reimbursement and Break-Up Fee will be due and payable upon the closing of an agreement providing for an Alternative Transaction.  Notwithstanding anything herein to the contrary, the Buyer acknowledges and agrees that the Seller will not have and has no liability with respect to the payment of the Expense Reimbursement and the Break-Up Fee and that such obligations are the obligations of the Debtor only.

*Id.* § 10.2.3.

[5]   The descriptions which follow are intended for summary purposes only and, in the event of any inconsistency between these summaries and the Sale Agreement, the Sale Agreement shall govern in all respects.

E.      <u>No Sale to an Insider</u>.  The Buyer is not an insider of the Debtors within the meaning set forth in section 101(31) of the Bankruptcy Code.

F.      <u>No Agreements with Management</u>.  No agreements with management have been entered into in connection with the Sale.

G.      <u>No Releases</u>.  The Sale will not include releases of any party.

H.      <u>Private Sale/No Competitive Bidding</u>.  The Trustee seeks to proceed without bid procedures or a scheduled auction.  However, the Sale and Sale Agreement remain subject to higher or otherwise better offers. Furthermore, the Trustee shall have no obligation to perform the obligations under the Sale Agreement if in the exercise of his fiduciary duties Trustee determines that performance is not in the best interests of the Debtors or their estates.

I.      <u>Closing and Other Deadlines</u>.  The Sale Agreement requires closing no later than February 28, 2020.  The Sale Agreement also requires the filing of this Motion no later than February 7, 2020, seeking entry of a Sale Order, in a form acceptable to the Buyer.

J.      <u>Good Faith Deposit</u>.  $250,000, to be credited against the cash Purchase Price at closing, which shall be nonrefundable unless the Sale Agreement is terminated as a result of a termination under Sections 6.1.1, 6.1.2, 6.1.3, 6.1.5, or 6.1.6 (each a "<u>Refund Event</u>").

K.      <u>Interim Arrangements with Proposed Buyer</u>.  The Buyer will consult with the Seller on the terms of any press release concerning the Sale Agreement and Acquired Assets.  The Buyer may then issue one or more press releases upon the prior approval of Seller, which shall not be unreasonably withheld, announcing the existence of this Agreement and intent to hold Assumed Events, subject to entry of the Sale Order and Closing.  The Parties agree to work in good faith to return the Debtors' website and internet presence to functionality at the expense of Buyer pursuant to Section 3.1.2 to make a portion of the Deposit non-refundable.  The Seller may, but has no obligation to, resume selling Tough Mudder event registrations through the Debtors' event registration platform with Active for each of the Assumed Events.  Any sales made after the Filing Date shall be deemed a US Ticket Sales and the proceeds delivered to the US Ticket Buyer Escrow.  The Seller reserves the right to condition any resumption of ticket sales on obtaining a satisfactory indemnity from the Buyer; provided, however, that any third party buyer under an Alternative Transaction must provide a replacement indemnification that is substantively identical to any indemnity provided by Buyer, and thereafter Buyer's indemnification would be void and have no force or effect.

L.      Use of Sale Proceeds. The proceeds of the Sale shall be deposited in the Debtors' bank account controlled by the Trustee and applied in accordance with the Bankruptcy Code or pursuant to further order(s) of the Court.

M.      Tax Exemption. The terms of the Sale do not address the use of tax exemptions.

N.      Record Retention. The Trustee will retain or otherwise maintain the right to access all necessary records for Debtors' reporting and tax obligations.

O.      Sale of Avoidance Actions. The terms of the Sale do not involve the sale of avoidance actions.

P.      Requested Findings as to Successor Liability. The proposed Sale Order includes findings of fact and a ruling that the Sale will not subject the Buyer to any liability whatsoever, including any successor liability, with respect to the Acquired Assets except as provided in the Sale Agreement. *See* Sale Order ¶¶ L, 10.

Q.      Sale Free and Clear of Liens, Claims, Encumbrances and Other Interests. The Trustee is requesting authority to transfer good title in the Debtors' interest in the Acquired Assets free and clear of all liens, other than the Assumed Liabilities, to the fullest extent permissible under section 363(f) of the Bankruptcy Code. *See* Sale Order ¶ 2.

R.      Credit Bid. Credit bidding is inapplicable.

S.      Assumption and Assignment of Certain Contracts; Cure Amounts. The Sale Agreement provides for the assumption and assignment of certain contracts identified on **Exhibit D** to this Motion. The proposed cure amount for each such contract is also identified on **Exhibit D**.

T.      Relief from Bankruptcy Rule 6004(h). The Trustee is requesting relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h). *See* Sale Order 11.

**D.      Time is of the Essence**

17.      Although the Trustee has only been appointed for a short time, it is apparent that the Debtors' business has materially deteriorated in value as a result of the events described above, and is at substantial and imminent risk of continued decline in value. For example, the Debtors have ceased operating, and are thus not meeting their commitments to customers who registered for races. McLaughlin Dec. ¶ 20. As a result, the Debtors' goodwill

and intellectual property that embodies that goodwill—which collectively represent a substantial portion of the Debtors' value—is significantly impaired, and is at risk of further impairment the longer the Debtors continue in this state. *Id.* The Debtors' future ability to retain or recruit corporate sponsors, a key component of revenue, is also likely severely impaired. *Id.*

18. Additionally, the events that form the core of the Debtors' business require many months of preplanning and commitments from third party sites, sponsors, vendors, and other parties, as well as extensive marketing to obtain advance customer registrations. *Id.* ¶ 21. A central component of the value of the Sale is the ability to maintain scheduled events. *Id.* But with each day and week that passes with the Debtors not operating, the ability to maintain scheduled events diminishes. *Id.* Indeed, as of the filing of this Motion, as a result of the Debtors ceasing operations, the events scheduled for the first two quarters of 2020 and others after that may no longer be salvageable and may need to be canceled. *Id.* ¶ 21. Unless the Sale is approved and closes on the timeframe required by the Sale Agreement, the same fate will befall the remaining 2020 events. This would represent a significant further deterioration in value to the Buyer or any purchaser. Therefore, the Trustee believes that consummating the Sale of the Debtors' business as soon as possible is necessary to preserve and maximize value. Additionally, for the foregoing reasons, the Buyer requires that the Sale close no later than February 28, 2020.

19. Furthermore, given the declining value of the Debtors' assets and the limited funds available, the Debtors' estates cannot afford to pursue a lengthy sale process. Accordingly, the Trustee proposes to proceed without bid procedures or a scheduled auction. Importantly, however, the Sale remains subject to higher or otherwise better offers, and the Sale Agreement contains a "fiduciary out" for the Trustee. Moreover, as described above and in the

McLaughlin Declaration, the Debtors' business and assets have been subjected to an extensive

marketing process, and the only party that made an offer for the Debtors' business or assets was

an affiliate of the Buyer.  Given these factors, the Trustee believes in an exercise of his business

judgment that pursuing a private sale on the timeframe required by the Sale Agreement is in the

best interests of the Debtors' estates under the circumstances.[6]

### RELIEF REQUESTED

20.     By this Motion, the Trustee seeks entry of the Sale Order substantially in

the form attached hereto as **Exhibit A**: (i) authorizing and approving the Trustee's entry into and

performance under the Sale Agreement; (ii) authorizing and approving the Sale of the Acquired

Assets to the Buyer, free and clear of all Encumbrances; (iii) approving the assumption and

assignment of certain contracts to the Buyer in connection with the Sale and related procedures;

(iv) approving the Bid Protections; and (v) granting related relief.[7]

### BASIS FOR RELIEF REQUESTED

### A.     The Sale Reflects a Sound Exercise of the Trustee's Business Judgment.

21.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee,

after notice and a hearing, may use, sell or lease, other than in the ordinary course of business,

property of the estate."  11 U.S.C. § 363(b)(1) (2018).  Section 105(a) of the Bankruptcy Code

provides: "[t]he Court may issue any order, process, or judgment that is necessary or appropriate

to carry out the provisions of this title."  *Id.*  § 105(a).  In pertinent part, Bankruptcy Rule 6004

---

[6]     Since the Appointment Date, an entity backed by a former insider of the Debtors has expressed interest in the Debtors' assets.  A copy of this Motion will be served on this entity as well as any other entities known to the Trustee to have expressed interest in purchasing the Debtors or their business or assets.  As described herein, the Trustee may consider higher or otherwise better offers should this entity or any other entity make such an offer.

[7]     For the avoidance of doubt, to the extent the Trustee receives and accepts a higher or otherwise better offer, this Motion shall constitute a request for approval of a sale pursuant to such offer.

states that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1).

22.     Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate, bankruptcy courts routinely authorize sales of a debtor's assets if such sale is based upon the sound business judgment of the debtor. *See, e.g.*, *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991); *In re Trans World Airlines, Inc.*, No. 01-00056, 2001 Bankr. LEXIS 980, at *29 (Bankr. D. Del. Apr. 2, 2001); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval of a section 363 sale requires a showing that the proposed sale is fair and equitable, a good business reason exists for completing the sale, and the transaction is in good faith).

23.     The Sale is a sound exercise of the Trustee's business judgment.  With no other viable offers for the Acquired Assets, the Debtors' estates are left with assets rapidly losing value with significant risk of offering no return to the Debtors' estates.  The Buyer has put forth the most favorable offer for these assets.  After due consideration of the terms of the offer, the Trustee concluded that the Sale Agreement provides the best value for the Acquired Assets that are otherwise at risk of losing significant, if not all, value.  The resulting Sale is the product of arm's-length negotiations between the Parties that includes fair and reasonable consideration under the circumstances.  In light of the foregoing, the Trustee believes that the Sale should be approved as a sound exercise of the Trustee's business judgment.

**B.    The Trustee May Sell the Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests.**

24.    In accordance with section 363(f) of the Bankruptcy Code, a trustee may sell property under section 363(b) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied: (1) such a sale is permitted under applicable nonbankruptcy law; (2) the party asserting such a lien, claim, or interest consents to such sale; (3) the interest is a lien and the purchase price for the property is greater than the aggregate amount of all liens on the property; (4) the interest is the subject of a bona fide dispute; or (5) the party asserting the lien, claim, or interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction for such interest.   11 U.S.C. § 363(f) (2018).

25.    The Trustee believes the Sale meets one or more of the foregoing conditions with respect to any entity that may assert an interest in the Acquired Assets.  As an initial matter, the Trustee is not aware of any party asserting a lien or other interest in the Acquired Assets.[8]  Nonetheless, all creditors and other parties in interest known to the Trustee will be served with a copy of the Motion and will have the opportunity to object and be heard, including with respect to any asserted lien or other interest in the Acquired Assets.  To the extent any entity believes it holds a lien or other interest in the Acquired Assets and does not object to the Motion, or whose objections are otherwise resolved, such entity will be deemed to have consented to the relief sought in the Motion pursuant to section 363(f)(2).  Moreover, to the extent any such lien or interest is valid and the holder does not consent, the Trustee believes that the holder of such lien or interest could be compelled to accept a money satisfaction of such

---

[8]    The Trustee has conducted a UCC search with the Secretary of State of Delaware to determine if any liens have been filed against the assets of the Debtors, and no such liens exist.

interest, or the Trustee will otherwise be able to satisfy the requirements of section 363(f). Furthermore, bankruptcy courts have recognized the equitable power to authorize sales free and clear of interests that are not specifically covered by section 363(f).  *See, e.g.*, *In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *3, *6 (Bankr. D. Del. Mar. 27, 2001); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.)*, 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987).  Accordingly, the Trustee requests that the Sale be approved "free and clear," with any liens, claims, encumbrances, and interests to attach to the proceeds of the Sale with the same validity, extent, and priority, and subject to the same rights and defenses, as existed immediately prior to the Sale.

## C.    The Sale Has Been Proposed in Good Faith.

26.    The Trustee additionally requests that the Court find that the Buyer is entitled to the protections provided by section 363(m) of the Bankruptcy Code in connection with the Sale.  Section 363(m) of the Bankruptcy Code provides, in pertinent part:

> The reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale . . . of property does not affect the validity of a sale . . . under such authorization to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

11 U.S.C. § 363(m) (2018).  Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal.

27.    Although the Bankruptcy Code does not define "good faith purchaser," the Third Circuit, construing section 363(m) of the Bankruptcy Code, has stated that "the phrase encompasses one who purchases in 'good faith' and for 'value.'"  *In re Abbotts Dairies of Pa. Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).  To constitute lack of good faith, a party's conduct in

connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." *Id.* (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)); *see also In re Bedford Springs Hotel, Inc.,* 99 B.R. 302, 305 (Bankr. W.D. Pa. 1989); *In re Perona Bros., Inc.*, 186 B.R. 813, 839 (D.N.J. 1995). Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings." *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *Rock Indus. Mach. Corp.*, 572 F.2d at 1198).

28.     As required by section 363(m) of the Bankruptcy Code, the Trustee believes that the Buyer has acted in good faith in negotiating the terms of the Sale. There is no evidence of fraud or collusion. The Buyer is not an insider of the Debtors as that term is defined in section 101(31) of the Bankruptcy Code, and, to the best of the Trustee's knowledge, all negotiations were conducted on an arm's-length, good faith basis. Further, in light of the prepetition marketing process, the lack of viable offers from other parties available now, and the consideration being provided under the Sale Agreement (which includes assumption of substantial liabilities), the Trustee believes that the Buyer is providing "value" within the meaning of *Abbotts Dairies*. Accordingly, under the circumstances, the Buyer should be afforded the benefits and protections that section 363(m) of the Bankruptcy Code provides to a good faith purchaser.

**D.      The Assumption and Assignment of Contracts, and Related Procedures Should be Approved.**

29.     The Trustee requests authority under section 365 of the Bankruptcy Code to assume and assign the designated events and/or contracts associated with the Acquired Assets (the "Assumed Events and Contracts") to the Buyer. The Trustee further requests that the Sale

Order provide that the assigned Assumed Events and Contracts will be transferred to, and remain in full force and effect for the benefit of, the Buyer notwithstanding any provisions in such assigned Assumed Events and Contracts, including those described in Bankruptcy Code sections 365(b)(2), (f)(1), and (f)(3), that prohibit such assignments.

30.    Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a trustee, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a) (2018).  Courts routinely approve motions to assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that the decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment.  *See, e.g.*, *In re Fleming Co. Inc.*, 499 F.3d 300, 305 (3d Cir. 2007); *Cinicola v. Scharffeberger*, 248 F.3d 110, 120 (3d Cir. 2001); *L.R.S.C. Co. v. Rickel Home Ctrs., Inc. (In re Rickel Home Ctrs., Inc.)*, 209 F.3d 291, 298 (3d Cir. 2000); *In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992); *Sharon Steel Nat'l Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 39–40 (3d Cir. 1989); *In re NII Holdings, Inc.*, Case No. 14-12611 (SCC) (Bankr. S.D.N.Y. Apr. 20, 2015); *In re Delia's, Inc.*, Case No. 14-23678 (RDD) (Bankr. S.D.N.Y. Dec. 24, 2014); *In re HQ Glob. Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003).  Any more exacting scrutiny would slow the administration of a debtor's estate, increase costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially.  *See Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

31.    Here, the assumption and assignment of the Assumed Events and Contracts related to the Acquired Assets is an integral component of the Sale, without which the Sale would not be a viable option.  Moreover, given that the Debtors have ceased operating and

have limited resources, the Trustee cannot otherwise perform under or assure performance under the Assumed Events and Contracts.  Therefore, without the Sale, the Trustee would be required to reject such Events and Contracts.  By assuming and the assigning the Assumed Events and Contracts, the Trustee will maximize the value of the Debtors' estates while avoiding rejection damages claims that would arise from the rejection of the Assumed Events and Contracts.  The Trustee therefore submits that the assumption and assignment of the Assumed Events and Contracts pursuant to the Assignment and Assumption Agreement[9] is an appropriate exercise of the Trustee's business judgment and should be approved by the Court.

32.    Section 365(b)(1) of the Bankruptcy Code requires that, for a trustee to assume an executory contract, it must "cure, or provide adequate assurance that the debtor will promptly cure," any default which is required to be cured, including compensating or providing adequate assurance of prompt compensation for any "actual pecuniary  loss" relating to such default.  11 U.S.C. § 365(b)(1) (2018).  The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction."  *EBG Midtown South Corp. v. McLaren/Hart Env. Eng'g Corp. (In re Sanshoe Worldwide)*, 139 B.R. 585, 593 (S.D.N.Y. 1992); *see also In re Fleming Co. Inc.*, 499 F.3d 300, 305 (3d Cir. 2007); *Cinicola v. Scharffeberger*, 248 F.3d 110, 120 (3d Cir. 2001).

33.    The Trustee's proposed procedures are appropriate and reasonably tailored to provide counterparties to the Assumed Events and Contracts (each, a "Non-Debtor Counterparty" and, collectively, the "Non-Debtor Counterparties") with adequate notice of the proposed assumption and assignment of the Assumed Events and Contracts, as well as proposed

---

[9]    The Assignment and Assumption Agreement is attached as Exhibit B to the Sale Agreement, attached hereto at **Exhibit B**.

cure amounts (the "Cure Amount(s)"), if any.  All Non-Debtor Counterparties who receive notice of the Sale Motion will be given a reasonable opportunity to object to the assumption and assignment of the Assumed Events and Contracts or the proposed Cure Amount(s), if any (the "Objection Deadline").  If no objection is filed with regard to a particular Cure Amount by the Objection Deadline, such Cure Amount shall be binding on the Trustee, the Buyer, and the applicable Non-Debtor Counterparty.  The payment of the Cure Amount(s) specified in the Assumption and Assignment Notice (or a different amount, either agreed to by the Trustee or resolved by this Court as a result of a timely-filed objection by the relevant Non-Debtor Counterparty) will be in full and final satisfaction of all obligations to cure defaults and compensate the Non-Debtor Counterparties for any pecuniary losses under the applicable Assumed Events and Contracts pursuant to Bankruptcy Code section 365(b)(1), unless the Trustee determines, before the hearing regarding assumption and assignment of such Assumed Events and Contracts, that such Assumed Event or Contract is not truly executory, and does not need to be cured to transfer the Acquired Assets to the Buyer.  If an objection is filed with regard to a particular Cure Amount by the Objection Deadline, it will be heard by the Court at the Sale Hearing or at another date established by the Court at the request of the Trustee and the Buyer.

34.    In addition, to the extent that any additional events or contracts are added as Assumed Events and Contracts, the Trustee will file and serve a Supplemental Notice of Assumption and Assignment of Certain Events and Executory Contracts and Proposed Cure Amounts (the "Supplemental Assumption and Assignment Notice") on the applicable Non-Debtor Counterparties.  The Supplemental Assumption and Assignment Notice will give Non-Debtor Counterparties a reasonable opportunity to object to the assumption and assignment of the Assumed Events and Contracts or the proposed Cure Amount(s), if any, at least 10 days from

18

service of the Supplemental Assumption and Assignment Notice (the "Supplemental Objection Deadline"). If no objection is filed with regard to a particular Cure Amount by the Supplemental Objection Deadline, such Cure Amount shall be binding on the Trustee, the Buyer, and the applicable Non-Debtor Counterparty. The payment of the Cure Amount(s) specified in the Cure Notice (or a different amount, either agreed to by the Trustee or resolved by this Court as a result of a timely-filed objection by the relevant Non-Debtor Counterparty) will be in full and final satisfaction of all obligations to cure defaults and compensate the Non-Debtor Counterparties for any pecuniary losses under the applicable Assumed Events and Contracts pursuant to Bankruptcy Code section 365(b)(1), unless the Trustee determines, before the hearing regarding assumption and assignment of such Assumed Events and Contracts, that such Assumed Event or Contract is not truly executory, and does not need to be cured to transfer the Acquired Assets to the Buyer. If an objection is filed with regard to a particular Cure Amount by the Objection Deadline, it will be heard by the Court at the Sale Hearing or at another date established by the Court at the request of the Trustee and the Buyer.

35.    The Trustee submits that the foregoing procedures are appropriate under the facts and circumstances of the Chapter 11 Cases and the proposed Sale.

36.    Bankruptcy Code section 365(f)(2)(B) states that a trustee may assign unexpired leases and executory contracts if, *inter alia*, the assignee provides "adequate assurance of future performance." 11 U.S.C. § 365(f)(2)(B)(2018). The Buyer is financially able and prepared to undertake all of the relevant obligations under the Assumed Events and Contracts. If necessary, the Trustee and the Buyer will submit, among other things, evidence of the Buyer's ability to provide adequate assurance of future performance under the Assumed Events and Contracts at the hearing regarding assumption and assignment of such Assumed Events and

Contracts.  Consequently, assumption and assignment of the Assumed Events and Contracts in connection with the Sale is appropriate under the circumstances.

37.    In addition, to facilitate the assumption and assignment of Assumed Events and Contracts, the Trustee further requests that the Court find all anti-assignment provisions therein, whether such provisions expressly prohibit or have the effect of restricting or limiting assignment of the Assumed Events and Contracts, to be unenforceable and prohibited pursuant to section 365(f) of the Bankruptcy Code.[10]

E.    **Approval of the Bid Protections Is Necessary.**

38.    This Court has acknowledged that a break-up fee is appropriate where it "is an essential inducement and condition of Buyer's entry into, and continuing obligations, under the APA."  *In re WorldSpace, Inc.*, Case No. 08-12412 (PJW), 2010 WL 4739929, at *4 (Bankr. D. Del. June 2, 2010).  Based on the Debtors' prepetition marketing of the Acquired Assets, where the Debtors were only able to secure a single potential buyer, having the Buyer be granted the Bid Protections is necessary to set a baseline bid for the Acquired Assets and induce the Buyer's entry into the Sale Agreement.  *See In re Katy Indus., Inc.*, No. 17-11101 (KJC) (Bankr. D. Del. June 19, 2017) (finding that a stalking horse purchaser provides a material

---

[10]    Section 365(f)(1) provides, in part, that "notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the trustee may assign such contract or lease."  11 U.S.C. § 365(f)(1) (2018).  Section 365(f)(3) further provides:

> Notwithstanding a provision in an executory contract or unexpired lease . . .  that terminates or modifies, or permits a party other than the debtor to terminate or modify, such contract or lease or a right or obligation under such contract or lease on account of an assignment of such contract or lease, such contract, lease, right, or obligation may not be terminated or modified under such provision because of the assumption or assignment of such contract or lease by the trustee.

*Id.* § 365(f)(3).

benefit to the debtor by increasing the likelihood of an increase in sale price for the purchased assets).

39.    In addition, the Bid Protections sought here are appropriate for a case of this size because bid protections reasonably reflect "the risk, effort, and expenses of the prospective purchaser." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 662 (S.D.N.Y. 1992).  The Debtors believe that the current proposed Break-Up Fee and Expense Reimbursement are sufficient based on the risk, effort, and expenses involved in this Sale, and the Bid Protections are within the range of other break-up fees approved in this District.  *See, e.g.*, Hr'g Tr. 31:8–9, *In re First Place Fin. Corp.*, No. 12-12961 (BLS) (Bankr. D. Del. Nov. 15, 2012) ("courts in this jurisdiction have gone . . . up to five percent [of the purchase price]" for a break-up fee alone.); *see also In re Sancilio Pharma. Co.*, Case No. 18-11333 (CSS) (Bankr. D. Del. June 28, 2018) (approving total bid protections of 9.667%—a 3% break-up fee and an expense reimbursement of up to $1,000,000 for a $15,000,000 stalking horse bid); *In re Nirvanix, Inc.*, Case No. 13-12595 (BLS) (Bankr. D. Del. Oct. 23, 2013) (approving total bid protections of 11%—comprising a $150,000 break-up fee and $150,000 expense reimbursement for a $2,800,000 stalking horse bid).  Therefore, the Court should approve the Break-Up Fee and Expense Reimbursement as necessary to the Sale.

F.    **No Consumer Privacy Ombudsman is Required.**

40.    Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that:

> if the debtor in connection with offering a product or a service discloses to an individual a policy prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the debtor and if such policy is in effect on the date of the commencement of the case, then the trustee may not sell or lease personally identifiable information to any person unless—

(A) such sale or such lease is consistent with such policy; or

(B) after appointment of a consumer privacy ombudsman in accordance with section 332, and after notice and a hearing, the court approves such sale or such lease—

(i) giving due consideration to the facts, circumstances, and conditions of such sale or such lease; and

(ii) finding that no showing was made that such sale or such lease would violate applicable nonbankruptcy law.

11 U.S.C. § 363(b)(1). This requirement of section 363(b)(1) is a stepped test. If the debtor either (1) does not have any policy regarding personally identifiable information ("PII") that it discloses to customers or (2) has and discloses a policy, but the policy does not prohibit the sale or lease of PII, then the next steps of the test are not reached. Here, the Debtors disclosed a policy on use of customer's PII, but the policy does not "prohibit[] the transfer of personally identifiable information."[11] For this reason, the relevant provisions of section 363(b)(1) are not implicated, and, therefore, the appointment of a consumer privacy ombudsman is not required.

## WAIVER OF BANKRUPTCY RULE 6004(H)

41. Under Bankruptcy Rule 6004(h), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen days after entry of the order. Fed. R. Bankr. P. 6004(h). The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before the order is implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h). Here, to maximize the value of the Debtors' estates, it is important that closing occur on an expedited basis, as soon as possible so that the Acquired Assets do not further lose value.

---

[11] A copy of the Debtors' policy on PII is attached hereto as **Exhibit E**.

Accordingly, the Trustee hereby requests that the Court waive the fourteen-day stay period under Bankruptcy Rule 6004(h).

### NOTICE

      42.    A copy of this Motion will be served via hand delivery, first-class mail, and/or electronic mail, where available and as applicable, upon the following: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Buyer; (c) counsel to the Debtors; (d) any other parties asserting an interest (as that term is used in section 363(f) of the Bankruptcy Code) in the Acquired Assets to the extent any such interest is reasonably known to the Trustee; (e) local, state, and federal authorities and agencies that have regulatory authority with respect to the Acquired Assets; (f) any party solicited, or that indicated an interest, in connection with the prepetition marketing process, to the extent known to the Trustee; (g) all creditors known to the Trustee; (h) any other party that has requested notice pursuant to Local Rule 2002-1(b); and (i) any party to an executory contract with the Debtors known to the Trustee.  The Trustee respectfully submits that no further notice of this Motion is required under the circumstances.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Trustee respectfully requests the Court grant the relief requested in this Motion and such other and further relief as the Court may deem just and proper.

Dated:  February 7, 2020
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/  Matthew B. Harvey*
Curtis S. Miller (No. 4583)
Matthew B. Harvey (No. 5186)
Joseph C. Barsalona II (No. 6102)
Matthew O. Talmo (No. 6333)
Brett S. Turlington (No. 6705)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: cmiller@mnat.com
        mharvey@mnat.com
        jbarsalona@mnat.com
        mtalmo@mnat.com
        bturlington@mnat.com

*Proposed Counsel for Derek C. Abbott, Esq., as Chapter 11 Trustee to Tough Mudder Inc. and Tough Mudder Event Production Incorporated*