# Exhibit C

## McLaughlin Declaration

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TOUGH MUDDER INCORPORATED; and | ) | Case No. 20-10036 (CSS) |
| TOUGH MUDDER EVENT PRODUCTION | ) | Case No. 20-10037 (CSS) |
| INCORPORATED, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

**DECLARATION OF KYLE MCLAUGHLIN IN SUPPORT OF CHAPTER 11 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING ENTRY INTO AND PERFORMANCE UNDER ASSET PURCHASE AGREEMENT BY AND AMONG SPARTAN RACE, INC., AND DEBTORS' CHAPTER 11 TRUSTEE, (II) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (III) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS AND RELATED PROCEDURES, (IV) APPROVING THE BID PROTECTIONS, AND (V) GRANTING RELATED RELIEF**

I, Kyle McLaughlin, hereby declare as follows:

1. I am over the age of 18 years and authorized to submit this declaration (the "Declaration") on behalf of Tough Mudder Inc. ("Tough Mudder") and Tough Mudder Event Production Inc. ("TM Events" and, together with Tough Mudder, the "Debtors"), whose affairs are currently being managed by Derek C. Abbott, Esq., the chapter 11 trustee (the "Trustee"). If I were called upon to testify, I could and would competently testify to the facts set forth herein.

2. I am the former President and Chief Executive Officer of Tough Mudder, a position I held from January 2019 to December 2019. Prior to that, I was a Senior Vice President of Live Events at Tough Mudder for six months. Following my separation from Tough Mudder, I have been hired as an independent contractor by Verdolino & Lowey, P.C. ("Verdolino"), proposed accountant and financial advisor to the Trustee, to assist the Trustee in carrying out his duties.

3. From my time spent working for Tough Mudder, and except as otherwise noted, I have personal knowledge of the matters set forth herein and could and would testify truthfully to such matters if called as a witness in these chapter 11 cases (the "Chapter 11 Cases").

4. I submit this Declaration in support of the *Chapter 11 Trustee's Motion for Entry of an Order (I) Approving Entry Into and Performance Under Asset Purchase Agreement by and Among Spartan Race, Inc., and Debtors' Chapter 11 Trustee, (II) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (III) Approving the Assumption and Assignment of Certain Contracts and Related Procedures, (IV) Approving the Bid Protections, and (V) Granting Related Relief* (the "Sale Motion").[1]

5. I am not being specifically compensated for this testimony other than on an hourly basis through payments received from Verdolino.

## BACKGROUND AND QUALIFICATIONS

6. Prior to obtaining a position with Tough Mudder, I served as the Senior Director of Event Production for the New York Road Runners for three-and-a-half years. Previously, I was a Senior Manager with the New York Road Runners for two-and-a-half years.

7. I have also worked as a Member of the Sports Sector Council within the U.S. Department of Homeland Security.

## GENERAL BACKGROUND OF THE CHAPTER 11 CASES

8. On January 7, 2020 (the "Petition Date"), Valley Builders LLC, Trademarc Associates, Inc., and David Watkins Homes Inc. (collectively, the "Petitioning Creditors") filed involuntary petitions under chapter 11 of title 11 of the United States Code (the

---

[1] Capitalized terms not otherwise defined herein are used as in the Sale Motion.

2

"Bankruptcy Code") against the Debtors.

9. On January 21, 2020, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order Directing the Appointment of a Chapter 11 Trustee* [D.I. 18].[2] The Court entered an order approving the appointment of the Trustee on January 30, 2020 [D.I. 24] (the "Appointment Date"), and the Trustee accepted his appointment on January 31, 2020 [D.I. 25]. Since that time, the Trustee has managed the Debtors' affairs pursuant to section 1106 of the Bankruptcy Code.

10. The Debtors are both Delaware corporations. Tough Mudder is the principal operating entity of the TM Group, consisting of Tough Mudder, TM Events, Tough Mudder Events Ltd., and certain of their domestic and foreign subsidiaries (collectively, the "TM Group"). Tough Mudder made all major corporate decisions for the TM Group and owns all of the TM Group's intellectual property. TM Events is a subsidiary of Tough Mudder.

11. Tough Mudder develops and hosts, either directly or through its subsidiaries, endurance event series in which participants compete in various obstacle course races around the world. Tough Mudder primarily generates revenue through ticket sales and advertising. Over the last two years, approximately 700,000 people participated in over 170 events around the world hosted by the TM Group.

12. Prior to the Petition Date, in the latter half of 2019, Tough Mudder's board of directors and management team ("Management") identified that Tough Mudder was financially distressed and needed to restructure its debt obligations, which it could no longer service in the ordinary course with the cash flow generated from the business. Management sought to refinance, recapitalize, or otherwise sell Tough Mudder on an expedited basis in an

---

[2] Docket item references in this Declaration are to the docket maintained in the chapter 11 case of *Tough Mudder, Inc.*, Case No. 20-10036 (CSS). No order of joint administration has been requested or entered in these cases to date.

3

effort to preserve Tough Mudder's business and restructure its debt. Management believed that if a transaction to save Tough Mudder's business as a going concern was not executed by the end of 2019, Tough Mudder, and TM Group as a whole, might have to cease operations, to the detriment of stakeholders generally.

13. Tough Mudder retained Imperial Capital, LLC ("Imperial"), an investment bank headquartered in Los Angeles, California, to assist in running a sale and investor solicitation process (the "SISP") whereby offers were solicited for the sale of the TM Group and, concurrently, strategic investors were sought to provide Tough Mudder with sufficient liquidity to continue as a going concern and realize its long-term business goals.

14. As a result of the SISP, the Buyer expressed interest in acquiring all or substantially all of the assets of the TM Group. Tough Mudder identified Spartan Race, Inc., or its designee (the "Buyer"), a sophisticated party and a competitor operating within the same industry, as its preferred purchaser and, with the approval of Management and after extensive arm's-length negotiations, entered into a letter of intent (the "LOI") with the Buyer on November 29, 2019. The LOI outlined terms for a potential sale transaction whereby the Buyer would acquire all or substantially all of the TM Group's assets and assume certain of the TM Group's liabilities with a view toward continuing to operate Tough Mudder's business as a going concern (the "Proposed Prepetition Transaction").

15. Believing the Proposed Prepetition Transaction to be in the best interests of the TM Group and its stakeholders generally, Management sought to finalize a definitive agreement with the Buyer. Apparently, however, Will Dean ("Dean"), Tough Mudder's co-founder, director, and majority shareholder, and Guy Livingstone ("Livingstone"), Tough Mudder's other co-founder and the Debtors' largest minority shareholder, sought multi-million

dollar payments from the Debtors' ticket sales platform, Active Networks LLC, for their equity position in Tough Mudder in connection with the Proposed Prepetition Transaction. The Debtors, Dean, and Livingstone could not reach an agreement with regard to the payments, and the Proposed Prepetition Transaction did not take place.

16. In the wake of the Proposed Prepetition Transaction not going forward, the Buyer sought to acquire all or substantially all of the assets of certain Tough Mudder subsidiaries through an alternative transaction. On December 23, 2019, Spartan Race Holdings, Inc. ("Spartan Race"), an affiliate of the Buyer, entered into an agreement (the "Call Option Deed") with Tough Mudder Events Ltd., Tough Mudder Ltd. and Tough Mudder GmbH (together, the "TM Subsidiaries"), wherein Spartan Race acquired the option to purchase all or substantially all of the TM Subsidiaries' assets, subject to the terms and conditions of the underlying Business Transfer Agreements (appended to the Call Option Deed) in respect of each TM Subsidiary. The transactions contemplated by the Call Option Deed were intended to be consummated in Canada and the United Kingdom through certain administrative proceedings. But shortly after the execution of the Call Option Deed, Dean appointed himself sole director of Tough Mudder Ltd. and all further action contemplated by the Call Option Deed stalled.

17. In the wake of the failed Proposed Prepetition Transaction and Call Option Deed, the TM Group was at a global standstill. The TM Group ceased operating and selling tickets in the midst of a severe liquidity crisis. The TM Group could no longer afford to pay its employees. As a result, on December 20, 2019, all activity in the Debtors' headquarters effectively ceased. Subsequently, the Petitioning Creditors filed the involuntary petitions commencing these Chapter 11 Cases.

18. At or about the time of the Appointment Date, I understand that the

Trustee received a term sheet (the "Term Sheet") from the Buyer proposing the Sale, by which the Buyer would acquire certain of the Debtors' assets through a section 363 sale in the Chapter 11 Cases.

19. I understand that following good faith, arm's-length negotiations, the Trustee reached agreement with the Buyer for the Sale of certain of the Debtors' assets under section 363 of the Bankruptcy Code on the terms and conditions set forth in the Sale Agreement.

20. It is apparent to me that the Debtors' business has materially deteriorated in value as a result of the events described above, and is at substantial and imminent risk of continued decline in value. For example, the Debtors have ceased operating, and are thus not meeting their commitments to customers who registered for races. As a result, the Debtors' goodwill and intellectual property that embodies that goodwill—which collectively represent a substantial portion of the Debtors' value—is significantly impaired, and is at risk of further impairment the longer the Debtors continue in this state. The Debtors' future ability to retain or recruit corporate sponsors, a key component of revenue, is also likely severely impaired.

21. Additionally, the events that form the core of the Debtors' business require many months of preplanning and commitments from third-party sites, sponsors, vendors, and other parties, as well as extensive marketing to obtain advance customer registrations. A central component of the value of the Sale is the ability to maintain scheduled events. But with each day and week that passes with the Debtors not operating, the ability to maintain scheduled events diminishes. Indeed, as of the filing of the Sale Motion, I understand that, as a result of the Debtors ceasing operations, the events scheduled for the first two quarters of 2020 and others after that may no longer be salvageable and may need to be canceled. Unless the Sale is approved and closes on the timeframe required by the Sale Agreement, I believe the same fate

will befall the remaining 2020 events.  This would represent a significant further deterioration in value to the Buyer or any purchaser.  Therefore, I believe that consummating the Sale of the Debtors' business as soon as possible is necessary to preserve and maximize value, and the proposed closing date of February 28, 2020, is necessary under the circumstances.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Brooklyn, New York
Dated:  February 7, 2020

Respectfully submitted,

*/s/ Kyle McLaughlin*
Kyle McLaughlin