# **<u>EXHIBIT A</u>**

Case C. Barnett Esq, SBN 233116
Geraldine Weiss, SBN 168455
**Case Barnett Law**
245 Fischer Ave, Suite B4
Costa Mesa, CA 92626
T: (949) 861-2990
F: (888) 883 4294
Case@casebarnettlaw.com
Geraldine@casebarnettlaw.com

Attorneys for Plaintiff,
WILLIAM BRUZZO

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN BERNARDINO

| | |
|---|---|
| WILLIAM BRUZZO, an Individual; <br><br>    Plaintiff, <br><br>         v. <br><br> TOUGH MUDDER INCORPORATED, a Delaware Corporation; TOUGH MUDDER EVENT PRODUCTION, INCORPORATED, a Delaware Corporation; GLEN HELEN RACING, INC., a California Corporation;  and DOES 1- 40, Inclusive, <br><br>    Defendants. | **UNLIMITED** <br><br> **Case No.: UNASSIGNED** <br><br> **COMPLAINT FOR DAMAGES** <br><br> 1. **NEGLIGENCE** <br> 2. **GROSS NEGLIGENCE** <br> 3. **NEGLIGENT HIRING, RETENTION AND SUPERVISION** <br> 4. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS** <br><br> **DEMAND FOR JURY TRIAL** |

## THE PARTIES

COMES NOW plaintiff WILLIAM BRUZZO and for a cause of action against defendants, and each of them, alleges:

1.     That the true names, identities, or capacities, whether individual, corporate, associate, or otherwise of defendants DOES 1 through 40, inclusive, are unknown to plaintiff at this time, and plaintiff therefore sues said defendants by such fictitious names.  When the true names, identities, capacities, or participation of such fictitiously designated defendants are ascertained, plaintiffs will ask leave of court to amend his Complaint to insert said names, identities, capacities, together with the proper charging allegations.

2.      Plaintiff is informed and believes and thereon alleges that each of the defendants sued herein as DOE is responsible in some manner for the events and happenings herein referred to, thereby proximately causing the damages to the plaintiff hereinafter set forth.

3.      At all times mentioned herein, each of the defendants sued herein was the agent, servant, and employee of each other and of his/her said co-defendants, and as such, was acting within the time, place, purpose, and scope of said agency, service and employment; that each and every defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring of each and every other defendant as an agent, servant, and employee, and were in some way negligently or otherwise, responsible for the events herein alleged.

4.      Plaintiff is informed and believes, and based upon such information and belief, thereon alleges that at all material times, Defendant TOUGH MUDDER, INCORPORATED, has been a corporation, incorporated under the laws of the State of Delaware and duly authorized to conduct business, and doing business in the State of California.

5.      Plaintiff is informed and believes, and based upon such information and belief, thereon alleges that at all material times, Defendant TOUGH MUDDER EVENT PRODUCTION,  INCORPORATED, has been a corporation, incorporated under the laws of the State of Delaware and duly authorized to conduct business in the State of California, and doing business in the State of California. Both TOUGH MUDDER, INCORPORATED and TOUGH MUDDER EVENT PRODUCTION, INCORPORATED, will hereinafter be referred to as TOUGH MUDDER defendants.

6.      Plaintiff is informed and believes, and based upon such information and belief, thereon alleges that at all material times, Defendant GLEN HELEN RACING, INC., has been a corporation, incorporated under the laws of the State of California and duly authorized to conduct business in the State of California, and doing business in the State of California.

7.      Plaintiff WILLIAM BRUZZO ("Plaintiff") is an individual residing in the County of Orange, in the State of California.

### GENERAL ALLEGATIONS

8.      Personal jurisdiction is proper because the events that injured Plaintiff occurred at the Glen Helen Raceway, owned and managed by GLEN HELEN RACING, INC., in the County of San Bernardino, California.

9.      Plaintiff is informed and believes, and based upon such information and belief,

thereon alleges that at all material times, Glen Helen Raceway has been a park that is owned by, and under the control of, GLEN HELEN RACEWAY, INC., and DOES 1-40, which rents it out for profit, including special race events held open to the general public.

10.     Plaintiff is informed and believes, and based upon such information and belief, thereon alleges that at all material times, defendants TOUGH MUDDER, and DOES 1-40, and each of them, are companies that collaborated to own, lease, conceive of, design, maintain, organize, implement, promote and operate races held open to the general public.

11.     Plaintiff is informed and believes, and based upon such information and belief, thereon alleges that Defendants TOUGH MUDDER, and DOES 1- 40 leased and / or rented Glen Helen Raceway from GLEN HELEN RACING, INC. to be used for a TOUGH MUDDER race which took place on April 6 and 7, 2019, [The Race], with the full knowledge and cooperation of GLEN HELEN RACING, INC.

12.     Plaintiff is informed and believes, and based upon such information and belief, thereon alleges that defendants TOUGH MUDDER, GLEN HELEN RACING, INC. and DOES 1-40, and each of them, collaborated to implement a system of implementation of safety and security for participants of The Race.

13.     Plaintiff is informed and believes, and based upon such information and belief, thereon alleges that at all material times, Defendants TOUGH MUDDER, GLEN HELEN RACING, INC.  and DOES 1 – 40 designed, constructed, marketed  and operated The Race and the obstacles therein including machinery to deliver a low voltage  harmless electric shock to participants.

14.     On or about April 7, 2019, Plaintiff participated in the TOUGH MUDDER Race in Glen Helen Raceway ("The Race"), at Glen Helen Ranch Road, 18585 Verdemont Ranch Road, located in the City of San Bernardino, County of San Bernardino, State of California.  The Race consisted of a race through mud, water, and through numerous obstacles, including low voltage harmless electric shocks, which were conceived and designed and managed by TOUGH MUDDER defendants and DOES 1-40.

15.     Prior to The Race, Defendants TOUGH MUDDER, GLEN HELEN RACEWAY,

INC. and DOES 1 – 40 should have identified and/or actually did identify that TOUGH MUDDER participants running through electrical wires with apparently unreliable voltage, is inherently dangerous, as posing a substantial risk of harm to TOUGH MUDDER participants, beyond the risk of harm inherent in the TOUGH MUDDER race which is marketed with seemingly benign low voltage electric shock.

16.    Plaintiff is informed and believes, and based upon such information and belief, thereon alleges that admission to The Race was open to the public and advertised to the general public. On its website for the Glen Helen Raceway event, TOUGH MUDDER declares that participants that its event will be a "party" including "after party" "red carpet bash" with "free beer" in its promotional materials: "*We're bringing the party, and the after party to La La Land in 2019. Tough Mudder 5K Los Angeles is popping off just an hour outside the city at Glen Helen Raceway. All the scenic vista and rolling hills on this epic course prove that the left coast is the best coast. No headshot, no auditions, just a muddy, obstacle packed red carpet base for you and your crew to crush. This ain't your grand-daddy's fun run. Tough Mudder 5K Los Angeles is a 3 miles of best – in – class obstacles designed and selected by our crew of genius engineers for max levels of fun and intense teamwork. None does it better than our most iconic obstacle, Everest 2.0, a 13' quarter pipe with a curved top that requires real teamwork to conquer. Bust through the finish line and keep the party going. Grab a frosty cold beer, listen to music, hang with your new best friends from the course, and soak in that first taste of Tough Mudder.*"

17.    Plaintiff is informed and believes, and based upon such information and belief, thereon alleges that Defendants TOUGH MUDDER and DOES 1 – 40 were aware of accidents happening around the country in races such as the TOUGH MUDDER Race in the past several years preceding The Race. TOUGH MUDDER proceeded to continue to market the race with the emphasis on it being a party event with an after party, beer and promise of new friends, while minimizing the potential harm involved.

18.    On April 7, 2019, Plaintiff arrived at the starting corrals for The Race at Glen Helen Raceway with his friends, ready to experience the promised comradery of a monitored

athletic experience.  The Race organizers, who upon information and belief, were employed by Defendants TOUGH MUDDER and DOES 1 – 40, prepared the racers to begin but at no point did The Race staff inform plaintiff that the electrical low voltage would malfunction and / or knock him out completely.

19.    Approximately at the last obstacle of The Race, Plaintiff approached the obstacle ("The Obstacle") which is a sand pit to climb through, with a bale of hay as an obstacle and some low voltage electrified wires hanging down a few feet above the ground, for participants to climb under.

20.    The only warning participants received on race day regarding the low voltage electrical shocks which were inherent in The Obstacle was a small sign close to The Obstacle. This sign did not mention about the risk that the electrical voltage could malfunction and electrocute plaintiff to the point he became unconscious.

21.    Plaintiff is informed and believes, and based upon such information and belief, thereon alleges that it is common practice in the racing industry to monitor Obstacles which pose any extreme danger which the participant may not be aware of, and ensure that any race obstacle operates within the confines of expectation and does not malfunction. A prime example of this is a low voltage electrical shock devise that produces a high voltage current which can shock a person unconscious.

22.    Plaintiff is informed and believes, and based upon such information and belief, thereon alleges that it is common practice in the racing industry to not only monitor,  but also to place explicit warnings before or over Obstacles, informing participants of the risk of extreme danger, in the event that the Obstacle does not operate as advertised and becomes dangerous to enter into. A prime example of this is a low voltage electrical shock devise that produces a high voltage current which can shock a person unconscious.

23.    Before Plaintiff reached The Obstacle, there was no sign of race staff members monitoring voltage levels and / or warning of any unreasonable danger posed by The Obstacle or discouraging participants from running into The Obstacle. Participants were encouraged to enter The Obstacle. An employee MC, made light of The Obstacle, treating it as a big joke and

encouraging participation.

24.    After entering into The Obstacle, Plaintiff was in between two wires, which electrocuted him so severely, he fell to the ground and lost consciousness.

25.    When Plaintiff regained consciousness, he could not initially get back up. During the period of time that he was unconscious and the period of time he struggled to get out of The Obstacle, no staff members of The Race came to his assistance.

26.    Upon regaining consciousness, Plaintiff crawled out of The Obstacle and despite staff members of The Race stationed adjacent to The Obstacle, none of said staff members acknowledged Plaintiff lying down unconscious in the sand not tried to help him out of The Obstacle.

27.    Plaintiff is informed and believes, and based upon such information and belief, thereon alleges that Defendants TOUGH MUDDER, GLEN HELEN RACEWAY, INC. and DOES 1 – 40 negligently conceived of, marketed, monitored, maintained and implemented, and failed to limit the voltage of the low voltage electric voltages which rendered plaintiff unconscious and failed to implement and/or enforce safety monitoring and safety measures commonly used in similar races to prevent the exact type of injury suffered by Plaintiff.

## FIRST CAUSE OF ACTION

### NEGLIGENCE

(Against ALL DEFENDANTS and DOES 1 – 40)

28.    Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1 – 27, inclusive.

29.    At all times relevant to the Complaint, defendants, and each of them, owed a duty to Plaintiff, as a participant in The Race, to make the course reasonably safe, to design, construct, promote, organize and operate The Race and the activities involved with The Race with reasonable care, to warn of any dangers posed by the course which had not been specifically explained to plaintiff, such as high voltage eclectic shocks, to prohibit any activity that would pose an unknown danger to Plaintiff as a participant in The Race, to monitor low voltage electric shocks so they did not injure a race participant and to have knowledgeable

employees standing by to assist race participants in case of unexpected injury.

30.     Defendants, and each of them, fell below that standard by, among other things, failing to properly conceive of, monitor, maintain and implement and limit, the low voltage electric voltages which rendered plaintiff unconscious, give verbal warnings at any time prior to or during The Race due to the severity of the electroshock. Defendants, and each of them failed to post adequate warning signs throughout The Race course regarding the intensity of The Obstacle and the electrified wires and failed to assist Plaintiff out of The Obstacle after Plaintiff was injured and failed to render aid to Plaintiff after he was electrocuted.  Defendants, and each of them, designed The Obstacle in such a way that participants of The Race could not determine the intensity of the electrocution wires within The Obstacle or see the danger posed by The Obstacle, supporting a culture where faster and more dangerous is better than safe. Defendants and each of them promoted The Race with promises of a red carpet party and free beer, while minimizing safety issues and failing to implement and/or enforce safety measures commonly used in similar races to prevent the exact type of injury suffered by Plaintiff, and otherwise failing to exercise due care with respect to the matters herein alleged.

31.     Defendants, and each of them, were both the actual and legal cause of Plaintiff's injuries because had they taken reasonable steps to make the TOUGH MUDDER Race safe, monitor the level of electrical current, fully warn Plaintiff of potential dangers posed by its unsafe electrical voltage obstacle, Plaintiff would not have been injured.  This lack of warning and Defendants, and each of them failure to take reasonable steps to make the Tough Mudder Race safe and assist plaintiff after he was electrocuted, were the substantial factors in causing Plaintiff's injury.

32.   As a direct and proximate result of the negligence, carelessness, and unlawfulness of Defendants, and each of their actions and inactions, as herein alleged, Plaintiff was injured in health, strength, and activity, and sustained severe injuries to his body both internally and externally, all of which injuries have caused and continue to cause Plaintiff great mental anguish, physical pain, nervous pain, and suffering.

33. As a further proximate result of the negligence, carelessness, and unlawfulness of

Defendants, and each of them actions and inactions, as herein alleged, Plaintiff was required, and is informed and believes and based upon such information and belief thereon alleges, that Plaintiff will require, to engage the services of doctors, surgeons, physicians, nurses, hospitals, and like-related professional services, including drugs, medicines, x-rays and medical expenses, and has incurred and will continue to incur lost earnings and lost earning capacity, all to his general and special damages in a sum according to proof at the time of trial, and that Plaintiff has incurred incidental and extreme financial damages.

## SECOND CAUSE OF ACTION

### GROSS NEGLIGENCE

#### (Against ALL DEFENDANTS and DOES 1 – 40)

34.     Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1 – 33, inclusive.

35.     At all times relevant to the Complaint, Defendants, and each of them, owed a duty to Plaintiff, as a participant in The Race, to make the course reasonably safe, to design, construct, promote, organize and operate The Race and the activities involved with The Race with reasonable care, to warn of any dangers posed by the course, and to prohibit any activity that would pose a danger to Plaintiff as a participant in The Race.

36.     Defendants, and each of them, were aware of the potential serious injury to participants, if the electrical wires located within The Obstacle were not monitored and the level of electricity carefully accessed. Defendants consciously disregarded taking action to address this known safety risk and adequately monitor a devise that could, and did, lead to catastrophic injury and could have led to possible death.  Defendants, and each of them, did this while advertising its event as a fun party with free beer and disregard for the serious nature of the activity it was selling for profit.

37.     Defendants  fell below that standard by, among other things: failing to properly conceive of, monitor, maintain and implement, and  limit the voltage of the low voltage electric voltages which rendered plaintiff unconscious; failing to give verbal warnings at any time prior to or during The Race regarding the electric shock therapy severity within The Obstacle; failing

to put in place written warnings, rules or guidelines in regard to the electric shock therapy severity within The Obstacle; failing to assist Plaintiff out of The Obstacle after Plaintiff was injured; and failing to render aid to Plaintiff in an adequate and timely manner after he was unconscious. Defendants, and each of them, designed and constructed The Obstacle in such a way that participants of The Race were focused on having a "party" with free beer while minimizing the risk of catastrophic injury and possible death. Participants could not determine the currency of the electric wires or see the danger posed by The Obstacle as part of a culture where faster and more dangerous is better than safer, if it means more profits. Defendants, and each of them, failed to implement and/or enforce safety measures commonly used in similar races to prevent the exact type of injury suffered by Plaintiff, and otherwise failing to exercise due care with respect to the matters herein alleged.

38.     Defendants, and each of them, conduct and inaction constituted a want of even scant care and an extreme departure from the ordinary standard of conduct. Such outrageous lack of care represents an extreme departure from the ordinary standard of conduct in the context of this situation.

39.     Defendants, and each of them, are both the actual and legal cause of Plaintiff's injuries, because had they taken reasonable steps to make The Race safe with its electric shock component of The Obstacle, and also warned Plaintiff of the real and elevated potential dangers posed by its obstacles, and had staff stationed to immediately assist Plaintiff once he was unconscious, Plaintiff would not have been injured. In addition, the lack of warning and defendants' failure to take reasonable steps to make The Race and The Obstacle safe were the substantial factors in causing Plaintiff's injury.

40.     As a direct and proximate result of the gross negligence, extreme carelessness and unlawfulness of Defendants, and each of them, actions and inactions, as herein alleged, Plaintiff was injured in health, strength, and activity, and sustained severe injuries to his body both internally and externally, all of which injuries have caused and continue to cause Plaintiff great mental anguish, physical pain, nervous pain, and suffering.

41.     As a further proximate result of the gross negligence, extreme carelessness and

unlawfulness of Defendants, and each of them, actions and inactions, as herein alleged, Plaintiff was required, and is informed and believes and and based upon such information and belief thereon alleges, that Plaintiff will require, to engage the services of doctors, surgeons, physicians, nurses, hospitals, and like-related professional services, including drugs, medicines, x-rays and medical expenses, and has incurred and will continue to incur lost earnings and lost earning capacity, all to his general and special damages in a sum according to proof at the time of trial, and that Plaintiff has incurred incidental and extreme financial damages.

### THIRD CAUSE OF ACTION

### NEGLIGENT HIRING, RETENTION AND SUPERVISION

(Against all defendants and DOES 1-40)

42.    Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs 1 – 41, inclusive.

43.    At all times relevant to the Complaint, Defendants, and each of them, were the owners, leasers, renters, and  operators of Glen Helen Raceway and consequently had the duties to operate the park and The Race in a manner that would protect participants of The Race from foreseeable risks along with the duty to ensure that any of the staff for The Race entrusted with the responsibility of protecting participants of The Race. This duty included, but was not limited to, employing adequate technicians to properly set up and monitor electric shock voltage in The Obstacle, to employ adequate and competent security and first aid staff,  and to perform these responsibilities with the utmost care and satisfactorily protect participants of The Race from foreseeable risks.

44.    At all times relevant to the Complaint, Defendants, and each of them, employed persons to assist with The Race, including but not limited to electrical technicians,  security and first aid staff, who had the duties to operate the park and The Race in a manner that would protect participants of The Race from foreseeable risks.

45.    Plaintiff is informed and believes, and based upon such information and belief, thereon alleges that, Defendants, and each of them, were aware of the potential serious injury that crawling through The Obstacle could cause to participants of The Race and had notice that

The Race was improperly set up, maintained and staffed, yet Defendants, and each of them, failed to take action to address these known safety risk.

46.    Despite Defendants, and each of them, knowledge of the risks posed to participants of The Race as herein alleged, Defendants, and each of them, failed to properly supervise the individuals they hired to staff The Race.

47.    By utilizing persons who Defendants, and each of them, knew to be unfit to act as staff for The Race and by failing to properly supervise them, Defendants, and each of them, breached their duties owed to Plaintiff.

48.    As a direct and proximate result of Defendants, and each of them,  actions and inactions, as herein alleged, Plaintiff was injured in health, strength, and activity, and sustained severe injuries to his body both internally and externally, all of which injuries have caused and continue to cause Plaintiff great mental anguish, physical pain, nervous pain, and suffering.

49.    As a further proximate result of Defendants, and each of them, actions and inactions, as herein alleged, Plaintiff was required, and is informed and believes and and based upon such information and belief thereon alleges, that Plaintiff will require, to engage the services of doctors, surgeons, physicians, nurses, hospitals, and like-related professional services, including drugs, medicines, x-rays and medical expenses, and has incurred and will continue to incur lost earnings and lost earning capacity, all to his general and special damages in a sum according to proof at the time of trial, and that Plaintiff has incurred incidental and extreme financial damages.

## FOURTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

(Against all Defendants and DOES 21 – 40)

50.    Plaintiff repeats and incorporates by reference into this cause of action the allegations set forth above at Paragraphs l – 49, inclusive.

51.    At all times herein mentioned, Defendants, and each of them, owed a duty to Plaintiff and other participants of The Race to make the course reasonably safe for participants of The Race, to warn of any dangers posed by the course, and to prohibit any activity that would

pose a danger to participants of The Race.

52.     The acts and omissions of Defendants, and each of them, herein alleged, were done negligently, and Defendants, and each of them, knew, or should have known, that such actions and failure to act would injure and cause Plaintiff severe emotional distress.

53.     As a direct and proximate result of the negligence, carelessness, and unlawfulness of Defendants, and each of them, actions and inactions as herein alleged, Plaintiff was severely injured and has suffered humiliation, mental anguish, and emotional and physical distress, and has been injured in mind, all to his damage.  Furthermore, as a proximate result of the actions of Defendants, and each of them, Plaintiff has sustained severe damages in an amount to be proven at the time of trial.  Plaintiff is informed and believes and based upon such information and belief thereon alleges that Plaintiff will in the future suffer severe emotional distress, all to his general damage in a sum according to proof at the time of trial.

## PRAYER FOR RELIEF

54.     WHEREFORE, Plaintiff requests judgment against Defendants, and each of them, for the following:

1. For all non economic or general damages according to proof;
2. For all economic or special damages, including loss of past and future earning capacity according to proof;
3. For all medical and incidental expenses according to proof;
4. Punitive Damages according to proof as to the Second Cause of Action;
5. For interest on pecuniary losses  / awards whose amounts are certain from the date of the occurrence of such losses as allowed by law;
6. Costs of suit; and
7. Any other and further relief that the court considers proper.

## **DEMAND FOR JURY TRIAL**

55.    Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: November 7, 2019                          **CASE BARNETT LAW**

_____

GERALDINE WEISS, ESQ.
ATTORNEY FOR PLAINTIFF

---

**COMPLAINT FOR DAMAGES**                                  PAGE 13 OF 13